IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

FILED
DISTRICT COURT
OKLAHOMA COUNTY, OKLAHOMA
December 13, 2025 1:16 PM
RICK WARREN, COURT CLERK
Case Number CJ-2025-9248

| | |
|---|---|
| **TRISURA SPECIALTY**<br>**INSURANCE COMPANY**<br><br>*Plaintiff,*<br><br>v.<br><br>**SEDGWICK CLAIMS**<br>**MANAGEMENT SERVICES, INC.**<br><br>*Defendant,* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Judge: _____

## PLAINTIFF TRISURA SPECIALTY INSURANCE COMPANY'S ORIGINAL PETITION AND REQUEST FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Trisura Specialty Insurance Company ("Trisura" or "Plaintiff") files this Original Petition and Request for Declaratory Judgment, against Sedgwick Claims Management Services, Inc. ("Sedgwick" or "Defendant"), and in support hereof would respectfully show the Court as follows:

### I.   PARTIES

1.   Trisura is an Oklahoma corporation, with its principal place of business in Oklahoma City, Oklahoma.

2.   Sedgwick is an Illinois corporation, with its principal place of business in Memphis, Tennessee. Sedgwick can be served through its registered agent, Corporation Service Company, at 10300 Greenbriar Place, Oklahoma City, Oklahoma 73159.

### II.   JURISDICTION AND VENUE

3.   This Court possesses personal jurisdiction over Sedgwick pursuant to OKLA. STAT. tit. 12 § 2004(F).

4.  As further described by the facts below, this Court possesses subject matter jurisdiction over this action pursuant to OKLA. STAT. tit. 12 § 1651 and OKLA. CONST. art. VII, § 7.

5.  Venue is proper in this Court pursuant to OKLA. STAT. tit. 18 § 471 because Sedgwick is a foreign corporation doing business in Oklahoma, and it has a registered agent in Oklahoma County.

### III. FACTUAL BACKGROUND

*A.  Third Party Claims Administration Agreement*

6.  On or about May 1, 2021, Trisura and Sedgwick entered into a Third Party Claims Administration Agreement ("Agreement").

7.  Pursuant to the Agreement, Sedgwick was to act as Trisura's property and casualty claims servicing agent ("third-party administrator" or "TPA") in exchange for payment from Trisura.

8.  Section 5.18 of the Agreement requires Sedgwick to adhere to all requirements of the Agreement, including but not limited to those provided in Exhibit A of the Agreement.

9.  Specifically, Exhibit A provides that Sedwick shall give immediate Notice[1] to Trisura with appropriate supporting documentation upon learning of any of the following:

  A.  Any claim, suit or proceeding that appears to involve indemnity by Trisura or specifically names them as a party defendant;
  B.  Any occurrence, claim, award, or proceeding judgment for which the incurred is ≥ $50,000;
  C.  Any case involving:
    1. Coverage issues;
    2. Environmental spills;
    3. Any policy limit demand, regardless of liability;

---

[1] "Notice" refers to notice pursuant to the specific requirements set forth in Section 5.18 and Exhibit A of the Agreement, including the reporting and supporting documentation requirements.

        4. Amputation of major extremity;
        5. Brain or spinal cord injury;
        6. Death;
        7. Disability for a period of nine months or more;
        8. Any second or third degree burn of 25% or more of the body;
        9. Multiple or serious fracture
        10. Loss of sight or hearing
        11. Crushing or massive internal injury
        12. Single incident with multiple claimants which will involve liability to Trisura
        13. Any ex gratia payments
        14. Any complaint filed with any state Department of Insurance
        15. Any claim of complaint alleging punitive damages, bad faith or allegations of fraud

    D.    The reopening of any case in which further award might involve liability of Trisura.

10. Section 12.2 of the Agreement provides that Sedgwick must indemnify, hold harmless, and defend Trisura from and against any and all liabilities, loss, or damage that Trisura may suffer as a result of any claim, demand, cost, or judgment against it arising out of Sedgwick's negligence or willful misconduct in connection with its performance under the Agreement.

11. Additionally, Section 12.3 provides that "[e]ach Party agrees to keep the other fully informed of any matter for which it is defending, holding harmless or indemnifying the other Party."

12. Under Section 20 of the Agreement, the parties agreed that the "Agreement shall be governed in all respects, including validity, interpretation and effect, by the laws of the State of Oklahoma without giving effect to its conflicts of law's provisions."

### B.  *Claim by Billy Hernandez*

13. On or about October 10, 2023, Sedgwick was notified of a claim by Billy Hernandez ("Hernandez") against STRTR Logistics, LLC ("STRTR").

14. STRTR was the named insured on Policy Number F1P1065-2023, which was issued by Trisura (the "Policy").

15. At all pertinent times, both the Policy and claim by Hernandez against STRTR were governed by the Agreement, including but not limited to any lawsuit filed by Hernandez arising out of such claim.

16. At all pertinent times, Sedgwick was responsible for receiving, handling, and administering claims made against the Policy pursuant to the Agreement as well as any lawsuits arising out of any such claims.

17. The Hernandez claim was assigned to Sedgwick employee and Senior Claims Adjuster David Cole on or about October 10, 2023.

18. Ultimately, Hernandez filed a lawsuit against STRTR on January 10, 2024.

19. The Hernandez suit was filed in the County Court at Law No. 2 in Dallas County, Texas, under the case caption *Billy Hernandez v. STRTR Logistics, LLC and Joan Ardon*; Cause No. CC-24-00220-B (the "*Hernandez* suit").

20. Sedgwick received notice of the *Hernandez* suit in January 2024.

21. In the Hernandez claim and *Hernandez* suit, Hernandez alleged that he had been in a motor vehicle accident with a STRTR 18-wheeler, that the accident was the legal fault of STRTR, that Hernandez had suffered a brain and/or spinal cord injury (rendering him a paraplegic as a result of the accident), and that he had incurred disability in excess of nine months.

22. Following receipt of the *Hernandez* suit, Sedgwick appointed Wood, Smith, Henning & Berman, LLP ("Defense Counsel") to defend STRTR.

23. On or about September 5, 2024, counsel for Hernandez sent Defense Counsel a purported *Stowers Demand* (the "*Stowers Demand*"), offering to settle all claims for STRTR's policy limits.

24. In the *Stowers Demand*, Hernandez's counsel stated that failure to accept the policy limits demand would constitute bad faith and result in Trisura being responsible for an excess verdict.

25. Defense counsel forwarded the *Stowers Demand* to Sedgwick in September 2024.

26. A true, complete, and correct copy of the *Stowers Demand* is attached hereto as **Exhibit 1**.

27. In direct violation of Sedgwick's Notice obligations under Exhibit A, Sedgwick failed to give Notice to Trisura of the Hernandez claim, the *Hernandez* suit, or the *Stowers Demand*.

28. Rather than giving Notice to Trisura of the Hernandez claim, the *Hernandez* suit, or the *Stowers Demand*, Sedgwick instead unilaterally rejected the *Stowers Demand* without Trisura's knowledge, approval, or consent on September 26, 2024.

29. A true, complete, and correct copy of Sedgwick's letter rejecting the *Stowers Demand* is attached hereto as **Exhibit 2**.

30. At no point prior to September 26, 2024, did Sedgwick give Notice to Trisura of the Hernandez claim, the *Hernandez* suit seeking punitive damages, or the *Stowers Demand*.

31. Sedgwick's conclusions and decisions regarding handling of the Hernandez claim, the *Hernandez* suit, and/or the *Stowers Demand* were made *without any* consultation with Defense Counsel or Trisura.

32. Among other things, Sedgwick's failure to give Notice to Trisura of the Hernandez claim, the *Hernandez* suit, and/or the *Stowers Demand* each constitute a separate breach of the Agreement by Sedgwick.

33. Sedgwick's unilateral rejection of Hernandez's *Stowers Demand* without Trisura's knowledge, approval, or consent also constitutes a breach of the Agreement by Sedgwick.

34. On September 17 and 18, 2024, counsel for Hernandez conducted depositions of STRTR managers. In the depositions, Trisura was alleged to have provided certain services to STRTR, all of which Trisura has denied. Upon information and belief, such allegations, in addition to Sedgwick's rejection of the *Stowers Demand*, prompted counsel for Hernandez to amend the suit to name Trisura as an additional defendant.

35. On October 7, 2024, counsel for Hernandez amended the *Hernandez* suit, naming Trisura as an additional defendant.

36. On February 28, 2025, counsel for Hernandez sent a demand letter to Trisura and STRTR noting that Hernandez's economic damages for past and future medical expenses amounted to at least $23,386,170.99 and demanding $50,000,000.

37. If Sedgwick had simply abided by its contractual obligations and/or the standard of care generally adhered to by claims administration companies, Trisura would have been able to take steps to prevent the issuance of the *Hernandez* suit by giving serious consideration to any *Stowers Demand*, and Trisura would not likely have been named as a defendant in the *Hernandez* suit.

38. On June 4, 2025, Trisura sent a Notice Letter to Sedgwick, advising it that all of the foregoing constituted violations of the Agreement. In addition, Trisura sent another letter to Sedgwick on July 11, 2025, setting forth the same information and reserving all rights and remedies

available under the Agreement and applicable law. On October 27, 2025, Trisura made a third demand on Sedgwick related to the *Hernandez* suit, which included a request for defense and indemnity from Sedgwick's counsel. On October 29, 2025, Trisura sent a follow-up email to obtain Sedgwick's cooperation with the October 27, 2025, demand.

39. As of the date of this Petition, Sedgwick has yet to agree to defend or indemnify Trisura or otherwise respond to the substantive allegations set out in this lawsuit and/or Trisura's three demand letters. Despite attempting to resolve the matter directly and amicably with Sedgwick on multiple occasions, Sedgwick has ignored Trisura's claims, leaving Trisura with no choice but to initiate the present litigation.

## IV.   CAUSES OF ACTION

### A.   *Breach of Contract*

40. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

41. Section 5.18 of the Agreement requires Sedgwick to adhere to all requirements addressed in Exhibit A of the Agreement. Under Exhibit A, Sedgwick was required to give immediate Notice to Trisura upon learning of any claim involving one or more of the following: (i) any policy limit demand, regardless of liability, (ii) brain or spinal cord injury, (iii) disability for a period of nine months or more, or (iv) any claim of or complaint alleging punitive damages, bad faith or allegations of fraud.

42. Despite Hernandez's claims and lawsuit involving all of the foregoing, Sedgwick did not give Notice to Trisura of the same or involve Trisura in any way. Sedgwick's repeated failures to give Notice to Trisura of Hernandez's claims, injuries, lawsuit, and/or *Stowers Demand* constitute a breach of the aforementioned provisions of the Agreement.

43. Moreover, Section 4 of the Agreement defines certain investigative work that Sedgwick was to perform as part of its claims services under the Agreement. However, Sedgwick failed to adhere to its contractual obligations and therefore has breached this provision of the Agreement.

44. As a result of Sedgwick's breaches of the Agreement, Trisura has been damaged, and such damages are ongoing. Specifically, Trisura has incurred, and will continue to incur, attorneys' fees and other litigation costs necessary to defend both itself and its insured against Hernandez's claims.

### B.   *Negligence*

45. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

46. As Trisura's agent and claims administrator, Sedgwick owed Trisura a duty to, among other things, investigate, manage, and give Notice to Trisura of all cases and claims in accordance with: (a) applicable state law and the terms and conditions of the Agreement; and (b) the customary standard of care generally adhered to by claims administration companies—to manage insurance claims with care, diligence, skill, reasonable experience and faithfulness.

47. Sedgwick was required to, with care, diligence, skill, reasonable experience and faithfulness, in accordance with the customary standard of care generally adhered to by claims administration companies, investigate the Hernandez claim, consult with Defense Counsel, and consult with and give Notice to Trisura of the Hernandez claim, the *Hernandez* suit, and the *Stowers Demand*.

48. Under Section 5.18 of the Agreement, Sedgwick was required to, with care, diligence, skill, reasonable experience and faithfulness, give immediate Notice to Trisura upon learning of any claim involving one or more of the following: (i) any policy limit demand,

regardless of liability, (ii) brain or spinal cord injury, (iii) disability for a period of nine months or more, or (iv) any claim of or complaint alleging punitive damages, bad faith or allegations of fraud.

49. Despite the Hernandez claim, the *Hernandez* suit, and the *Stowers Demand* involving all of the foregoing, Sedgwick did not give Notice to Trisura of the same, nor did Sedgwick consult with and or involve Trisura in any way before the *Stowers Demand* was unilaterally rejected by Sedgwick.

50. Sedgwick failed to investigate Hernandez's claims in accordance with the customary standard of care generally adhered to by claims administration companies by acting unreasonably and contrary to industry practice.

51. All of the losses, damages, costs or expenses, including attorneys' fees and disbursements and court costs incurred by Trisura in connection with the *Hernandez* suit directly and proximately resulted from the aforesaid acts and/or omissions of Sedgwick and were not caused by Trisura.

52. As a result of Sedgwick's failure to act with ordinary care and diligence, Trisura has been damaged, and such damages are ongoing. Specifically, Trisura has incurred, and will continue to incur, attorneys' fees and other litigation costs necessary to defend against Hernandez's claims.

C.  *Gross Negligence*

53. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

54. As Trisura's agent and claims administrator, Sedgwick owed Trisura a duty to, among other things, investigate, defend, manage, and give Notice of all cases and claims in accordance with: (a) applicable state law and the terms and conditions of the Agreement; and (b)

the customary standard of care generally adhered to by claims administration companies—to manage insurance claims with care, diligence, skill, reasonable experience and faithfulness.

55. Under Section 5.18 of the Agreement, Sedgwick was required to, with care, diligence, skill, reasonable experience and faithfulness, give immediate Notice to Trisura upon learning of any claim involving one or more of the following: (i) any policy limit demand, regardless of liability, (ii) brain or spinal cord injury, (iii) disability for a period of nine months or more, or (iv) any claim of or complaint alleging punitive damages, bad faith or allegations of fraud.

56. Despite Hernandez's claim involving all of the foregoing, Sedgwick did not give Notice to Trisura of the same.

57. Sedgwick failed to defend against Hernandez's claims in accordance with the customary standard of care generally adhered to by claims administration companies by acting unreasonably, recklessly, and contrary to industry practice and with no care for the consequences by unilaterally rejecting the *Stowers Demand* before giving Notice to Trisura of the Hernandez claim or suit.

58. Sedgwick failed to administer Hernandez's claims in accordance with the customary standard of care generally adhered to by claims administration companies by acting unreasonably, recklessly, and contrary to industry practice and with no care for the consequences by failing to give Notice to Trisura that Hernandez's lawsuit had been filed, failing to give Notice to Trisura of Hernandez's claims, and failing to give Notice to Trisura of the *Stowers Demand*.

59. All of the losses, damages, costs or expenses, including attorneys' fees and disbursements and court costs incurred by Trisura in connection with the *Hernandez* suit directly and proximately resulted from the aforesaid acts and/or omissions of Sedgwick and were not caused or contributed to by Trisura.

60. If Sedgwick had simply adhered to its contractual and fiduciary obligations, Trisura would have suffered no additional loss or expense with respect to Hernandez's claim against STRTR, including the costs incurred in preparing the present lawsuit and defending itself in the *Hernandez* suit.

61. Trisura requests exemplary damages under OKLA. STAT. ANN. tit. 23, § 9.1, as Defendant's conduct demonstrated a reckless disregard for the rights of Trisura. Trisura seeks punitive damages in excess of the amount set forth in Section 1332(a) of Title 28 of the United States Code.

### D. *Request for Declaratory Judgment*

62. Trisura re-alleges all preceding paragraphs as if fully set forth herein.

63. As stated further herein, a controversy exists between the parties.

64. The Agreement's terms demonstrate that Sedgwick was required to immediately give Notice to Trisura of Hernandez's claim and the *Stowers Demand* offering to settle for an amount within the policy limits.

65. Sedgwick's failure to give Notice to Trisura of such claims, failure to give Notice to Trisura of the *Stowers Demand*, rejection of such *Stowers Demand* without first consulting with Trisura, and failure to give Notice to Trisura that Hernandez's lawsuit had been filed, either singularly or in combination, constitute negligence by Sedgwick in its performance under the Agreement and under the customary standard of care generally adhered to by claims administration companies.

66. Because Sedgwick's actions and inactions constitute negligence, Section 12.2 of the Agreement provides that Sedgwick is required to "indemnify, hold harmless and defend" Trisura from and against "any and all liabilities, loss or damage that [it] may suffer as a result of

any claim, demand, cost or judgment against [it] arising out of the negligence or willful misconduct of [Sedgwick]." This includes paying for Trisura's costs incurred to defend itself against Hernandez's claims and indemnifying Trisura for any amounts that it may have to pay to Hernandez, either as part of any settlement or any final judgment.

   67. Accordingly, Plaintiff respectfully asks that the Court declare as follows:

     a. Sedgwick has committed either "willful misconduct" or "negligence" under the Agreement; and

     b. Pursuant to the Agreement, Sedgwick is required to indemnify, hold harmless, and defend Trisura from and against any and all liabilities, loss or damages that it may suffer as a result of any claim, demand, cost or judgment against them arising out of Sedgwick's willful misconduct and/or negligence, including but not limited to any and all attorney fees and litigations costs incurred by Trisura in defending against Hernandez's claims (regardless of whether such amounts are paid pursuant to a settlement of Hernandez's claims with Trisura or pursuant to a final judgment rendered against Trisura).

### E. *Indemnification*

   68. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

   69. All the losses, costs, damages and expenses suffered by Trisura have been the direct result of Sedgwick's failure to perform its obligations under or relating to the Agreement and were not caused or contributed to by Trisura.

   70. Under Section 12.2 of the Agreement, Trisura is entitled to indemnification by Sedgwick (i) in the sum of $65,309.25 for the losses, costs, and expenses already incurred in

defending the *Hernandez* suit and in preparing the current case; and (ii) in an amount that is not yet determinable in the *Hernandez* suit, plus its reasonable costs, expenses and attorneys' fees in the prior actions, and all of its losses, costs and expenses, including reasonable attorneys' fees in this action.

## V.    JURY DEMAND

71.    Plaintiff demands a trial by jury on all issues so triable.

## VI.    PRAYER

72.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final hearing, the Court grant the declaratory relief requested herein, and further that the Court enter a judgment in favor of Plaintiff and against Defendant for:

   a. Actual, compensatory, consequential, and statutory damages;

   b. Punitive damages pursuant to OKLA. STAT. ANN. tit. 23, § 9.1, in an amount to be determined by the jury;

   c. Attorneys' fees and costs of court;

   d. Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

   e. Award Plaintiff such other and further relief to which it may be entitled.

Respectfully Submitted,

*[signature]*

michael@mcdaniel-law.com
MCDANIEL LAW
7107 South Yale Ave., No. 424
Tulsa, OK 74136
918.695.5855

-and-

**McCathern, Shokouhi, Evans, PLLC**

/s/ *Carl L. Evans, Jr.*
Carl L. Evans, Jr.
Texas State Bar No. 24056989
cevans@mccathernlaw.com
Jonathan M. Vivat
Texas State Bar No. 24149779
jvivat@mccathernlaw.com

3710 Rawlins Street, Suite 1600
Dallas, Texas 75219
Telephone: (214) 741-2662
Facsimile: (214) 741-4717

**ATTORNEYS FOR PLAINTIFF**